IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREGORY WOODS**, | : | CIVIL ACTION NO. 1:07-CV-0084 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **CAPT. CHIARELLI**, et al., | : | |
| Defendants | : | |

## **MEMORANDUM**

Plaintiff Gregory Woods ("Woods") commenced this civil rights action on January 16, 2007. (Doc. 1.) He is presently proceeding *via* an amended complaint. (Doc. 15.) Named as Defendants are Captain Frank Chiarelli, Assistant Warden Timothy Betti and Correctional Officer Barry Craven. Before the court is defendants' motion for summary judgment. (Doc. 35.) For the reasons set forth below, the motion will be granted.

**I.    Statement of Material Facts**

In December 2006, the United States Marshal's Service transported Woods, a federal inmate, to the Lackawanna County Correctional Facility ("LCCF"). He entered the facility with a "Prisoner Custody Alert Notice," generated by the United States Marshal's Service, that informed the prison staff that he was to be separated from federal inmates Basir Woods, who is Woods' son , Dominic Wilkins, and David Savage, and that they were all to be separated from each other. (Doc. 37-2, at 4.)

Woods is of the Muslim faith. (Doc. 15.) Woods' son, Wilkins, and Savage are also of the Muslim faith. (Affidavit of Frank Chiarelli, ("Chiarelli Affidavit), Doc. 37-2 at 5, ¶ 1.) At some point after his arrival at LCCF, Woods was insisting on attending Muslim services with his son, Wilkins and Savage. (Chiarelli Affidavit, Doc. 37-2, at 2, ¶ 3.) Because of the separation order, defendant Chiarelli, a captain at LCCF directed defendant Craven not to permit Woods to attend the services. (Id. at ¶¶ 3, 4.) Consequently, Woods was prohibited from attending services.

In a document entitled "motion to oppose Defendants motion for summary judgment," Woods indicates that he would like to challenge certain undisputed facts in court. (Doc. 39.) Specifically, he takes issue with being denied attendance at services and prayer class because none of the inmates named in the separation order are practicing Muslims and, therefore, his engaging in these communal activities would not have caused a security risk. (Doc. 39, at 1, ¶¶ 2, 4.) Notably, Woods does not provide any evidence in support of this statement.

## II. **Standard of Review**

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 314 (M.D. Pa. 2004). Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Township, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004). "Such affirmative evidence--

regardless of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989).  Only if this burden is met can the cause of action proceed.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P. 56(c), (e).

**III.    Discussion**

To establish a free exercise violation, Woods must show that the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interests.  See Turner v. Safley, 482 U.S. 78, 89 (1987).

The First Amendment offers protection for a wide variety of expressive activities.  See U.S. CONST. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  See Turner, 482 U.S. at 89.  Prisoners must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment.  Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).  However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion.  O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987).  It is well-established that only those religious beliefs which are (1) sincerely held, and (2) religious in nature

are entitled to constitutional protection. Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Dehart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000); Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981)(describing three indicia of religion (1) an attempt to address "fundamental and ultimate questions" involving "deep and imponderable matters"; (2) a comprehensive belief system; and (3) the presence of formal and external signs like clergy and observance of holidays.).

For purposes of the motion, defendants concede that "Woods' desire to attend communal Muslim worship services does implicate the Free Exercise of Religion clause of the First Amendment." (Doc. 37, at 6.) Once a plaintiff has demonstrated that a constitutionally protected interest is at stake, as is the case here, Turner v. Safley sets out a four-factor test to determine the reasonableness of the regulation. Turner, 482 U.S. at 89-90. The Turner test requires that:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational. Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests.

DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) (internal quotations and citation omitted). Substantial deference must be given to prison administrators' judgment. Overton v. Bazzetta, 539 U.S. 126, 132 (2003). While plaintiffs bear the overall burden of persuasion, id., prison administrators are required to demonstrate a

4

rational connection between the policy and the alleged interest, which "'must amount [ ] to more than a conclusory assertion.'" Jones v. Brown, 461 F.3d 353, 360 (3d Cir. 2006) (quoting Wolf v. Ashcroft, 297 F.3d 305, 308 (3d Cir. 2002) (internal quotations omitted)).

Under the first Turner prong, which requires that there be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, the court accords great deference to the judgments of prison officials "charged with the formidable task of running a prison." O'Lone, 482 U.S. at 353. Certain restrictions are justified by the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security. DeHart, 227 F.3d at 50-51.

According to defendants, "Woods was not permitted to attend Muslim services because he was subject to a separation order from the United States Marshal's Service as he was being held at the Lackawanna County Prison under the jurisdiction of the United States government." (Chiarelli Affidavit, Doc. 37-2 at ¶ 2.) Further, "[b]ecause the United States Marshal's Service had issued a separation order, it prevented Mr. Woods from being in the company of his son, and two other inmates and this was a condition of these inmates being housed at the Lackawanna County Correctional Facility." (Chiarelli Affidavit, Doc. 37-2 at ¶ 4.) Woods does not dispute the separation order. Rather, he simply states that although the other inmates were of the Muslim faith they were not "practicing" Muslims. (Doc. 39, at 1.) This is inconsequential. As noted by defendants, "[t]here

5

existed a thoroughly rational connection between the prison rule preventing Mr. Woods from attending Muslim services with these other individuals and the legitimate governmental interest in security to other inmates and staff at the correctional facility."  (Chiarelli Affidavit, Doc. 37-2 at ¶ 4.)

The second Turner prong requires "a court to assess whether inmates retain alternative means of exercising the circumscribed right. . . ." Fraise v. Terhune, 283 F.3d 506, 518 (3d Cir. 2002).  The inquiry focuses on whether the inmate had "alternative means of exercising the beliefs generally (*e.g.*, by prayer, worship, meditation, scripture study, etc.)." Dehart, 227 F.3d at 54.  Where "other avenues remain available for the exercise of the inmate's religious faith, courts should be particularly conscious of the measure of judicial deference owed to correction officials. . . ." DeHart, 227 F.3d at 59 (quoting Turner, 482 U.S. at 90) (internal quotations omitted).  As noted by defendants, although Woods was prevented from attending *communal* prayer services and study class, it is undisputed that he had access to the Koran and was allowed to freely practice his Muslim faith in the privacy of his cell.  (Affidavit of Barry Craven ("Craven Affidavit"), Doc. 37-2, at 2, ¶ 5; Chiarelli Affidavit, Doc. 37-2 at 6, ¶¶ 5, 6.)

"The third and fourth factors . . . focus on the specific religious practice or expression at issue and the consequences of accommodating the inmate for guards, for other inmates, and for the allocation of prison resources." DeHart, 227 F.3d at 57.  Defendants argue that the only way to comply with the separation order was to prohibit Woods from attending the service.  (Doc. 37, at 12.)  Woods argues that the

6

other inmates were not practicing Muslims, and seemingly suggests that defendants had an obligation to determine whether the other inmates were going to attend the services prior to denying Woods' request to attend services.  Significantly, the statement that the other inmates were not practicing Muslims is a wholly conclusory statement that is unsupported by any evidence.  When faced with a motion for summary judgment, the adverse party must produce affirmative evidence, beyond the disputed allegations, in support of the claim.  Woods has failed in this respect.  However, even if the statement was supported by evidence, to expect the prison guards to embark upon the suggested course of action would place an undue burden on the prison guards and administration.

Based on the foregoing, the court concludes that the prison policy that prevented Woods from attending communal prayer services did not violate his First Amendment rights.  Accordingly, defendants are entitled to an entry of summary judgment.  An appropriate order follows.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:       August 21, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GREGORY WOODS,** | : | **CIVIL ACTION NO. 1:07-CV-0084** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **CAPT. CHIARELLI, et al.,** | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 21st day of August, 2008, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 35) is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

3. The Clerk of Court is further directed to CLOSE this case.

4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

                                               S/ Christopher C. Conner
                                               CHRISTOPHER C. CONNER
                                               United States District Judge